**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

VICTIM 1,

                                   Plaintiff,                    6:25-cv-1530
                                                       (ECC/CBF)

v.

SERGEY STANILOVSKIY and YULIA
SYSOEVA,

                                   Defendants.

---

Anna V. Brown, Esq., *for Plaintiff*
Irina Shpigel, Esq., *for Defendants*

**Hon. Elizabeth C. Coombe, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

On October 30, 2025, Plaintiff "Victim 1" commenced this action against Defendants

Sergey Stanilovskiy (Stanilovskiy) and Yulia Sysoeva (Sysoeva), asserting claims under 18 U.S.C.

§ 2255, N.J. Stat. § 2A:61B-1, and common law. *See* Dkt. No. 1. Presently before the Court is

Defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dkt. No. 12. On January 26, 2026, Plaintiff filed a First Amended Complaint as of right and

opposed Defendants' motion. Dkt. Nos. 14, 15. Defendants elected to have their motion to dismiss

evaluated in light of the Amended Complaint's allegations and contend that the Amended

Complaint likewise fails to state a claim. *See* Dkt. Nos. 16, 17, 20, 21. For the following reasons,

Plaintiff's common-law claims are dismissed without prejudice for lack of subject-matter

jurisdiction, and Defendants' motion to dismiss is denied.

## I.    BACKGROUND[1]

### A.    Sexual Abuse

Plaintiff was born into the family of a prominent Russian Orthodox Church priest named Daniel Sysoev, who lived in Moscow, Russia. Dkt. No. 14 ¶ 7. Mr. Sysoev was killed in November 2009, when Plaintiff was eight years old. *Id.* at ¶¶ 9-10. Defendant Stanilovskiy thereafter moved into the Sysoevs' residence and began cohabitating with Defendant Sysoeva, Plaintiff's mother. *Id.* at ¶ 11. At some point after the move, Stanilovskiy "engaged in illicit sexual abuse / sexual grooming of Plaintiff," and was physically violent and verbally abusive towards Plaintiff and her two sisters. *Id.* at ¶ 12. Sysoeva "observed and permitted the abuse." *Id.* One of Plaintiff's sisters (Victim 2) "did not acquiesce to Stanilovskiy's abuse," and Sysoeva sent her to "live away from the family." *Id.* at ¶ 13. Stanilovskiy and Sysoeva married in or around 2012. *Id.* at ¶ 14.

In October 2014, Stanilovskiy purchased a home in Voorhees, New Jersey. *Id.* at ¶15. In June 2015, Stanilovskiy and Sysoeva "knowingly transported" Plaintiff from Russia to the New Jersey home "for the summer to engage her in illicit sexual conduct." *Id.* at ¶ 16. Defendants engaged Plaintiff in "sexual contact of sadistic nature—BDSM practices" during the summer of 2015, with both Defendants participating in the abuse. *Id.* at ¶ 17. Stanilovskiy paid Plaintiff $100 "for each session." *Id.* Defendants continued to engage Plaintiff in illicit sexual conduct upon the family's return to Russia. *Id.* at ¶ 20.

In January 2016, Victim 2 "observed the abuse" of Plaintiff by Stanilovskiy and reported it to police in Moscow. *Id.* at ¶ 21. The police came to Plaintiff's school and recorded an interview

---

[1] These facts are drawn from the Amended Complaint. The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020), but does not accept as true any legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

with her, and noted other minor victims of Stanilovskiy. *Id.* at ¶¶ 22-23. Stanilovskiy was arrested by Russian authorities on February 11, 2016. *Id.* at ¶ 24. Sysoeva "sided with Stanilovskiy," pressured Plaintiff to refute her accusations, threatened and attempted to commit suicide, and arranged for Plaintiff to visit the prison and see Stanilovskiy. *Id.* at ¶ 25. "As a result of [Sysoeva's] pressure," Plaintiff "withdrew her criminal case accusations," but the Russian authorities "nonetheless continued criminal prosecution of Stanilovskiy." *Id.* at ¶¶ 26, 27.

Stanilovskiy was "released from pretrial detention pending his criminal trial" in early 2018. *Id.* at ¶ 28. In April 2018, Stanilovskiy and Sysoeva "urgently and secretly left Russia" with Plaintiff and their other children. *Id.* at ¶ 29. The family "was smuggled in a minivan by crossing the border to Belorussia, so Stanilovskiy would not get detained." *Id.* at ¶ 32. After leaving Russia, Defendants and the children flew to the United States and went to the home in Vorhees. *Id.* at ¶¶ 33-34.

"Sometime after settling in Voorhees," Stanilovskiy "had a major violent outburst accusing Plaintiff of ruining his life and blaming her for the police involvement." *Id.* at ¶ 35. Defendants then told Plaintiff that to "control" Stanilovskiy's "aggression," Plaintiff "need[ed] to engage in sexual activity of sadistic nature—BDSM practices." *Id.* at ¶ 36. Plaintiff "tried to escape" but Sysoeva "restricted the exit from the family's basement." *Id.* at ¶ 37. Plaintiff then "complied with their demands." *Id.* During her high school years, Plaintiff "had to go to the basement" upon return from school "to engage in illicit sexual activities of sadistic nature," which also occurred in the master bedroom. *Id.* at ¶ 38. Initially, both Defendants "engaged in illicit sexual activities" with Plaintiff. *Id.* at ¶ 39. Stanilovskiy eventually "purchased a queen bed for [Plaintiff's] room, installed a padlock, [and] moved in with her . . . to engage in illicit sexual activities" without

Sysoeva. *Id.* at ¶ 40. Plaintiff alleges that the abuse "also happened when the family traveled for interstate vacations." *Id.* at ¶ 41.

Plaintiff left for college in 2019, and she "ran away" and "severed ties" with the family in December 2021. *Id.* at ¶¶ 43-44.

### B.     Share of Father's Property

Upon Mr. Sysoev's death, Sysoeva, Plaintiff, and Plaintiff's two sisters "inherited the rights to his intellectual property," including the rights to profits generated by its commercial use, in equal shares. *Id.* at ¶¶ 46-47; *see id.* at ¶ 7 (alleging that Plaintiff's father was "known for his missionary works and religious publications"); *see* Dkt. No. 14-1 (certification from Russian attorney and "Certificate of the Right to Inheritance Under the Law"). Defendants "took exclusive control over publishing of books and materials" authored by Mr. Sysoev and received profits generated by commercial publications. Dkt. No. 14 ¶ 48. Defendants continued commercial use of his property and receiving profits after moving to the United States in 2018. *Id.* at ¶ 49.

## II.     LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level[.]" *Id.* (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.   DISCUSSION

The Amended Complaint asserts four causes of action against Defendants for: (1) violation of 18 U.S.C. § 2255; (2) violation of N.J. Stat. § 2A:61B-1; (3) conversion; and (4) unjust enrichment/accounting/constructive trust. Dkt. No. 14 ¶¶ 50-88. Defendants move to dismiss the Amended Complaint in its entirety for failure to state a claim.

### A.      Claim Under 18 U.S.C. § 2255

Plaintiff's first cause of action is brought pursuant to 18 U.S.C. § 2255, which "provides a civil cause of action to victims of various child abuse violations." *Elden v. Nirvana L.L.C.*, 88 F.4th 1292, 1294 (9th Cir. 2023). Section 2255 reads, in part: "Any person who, while a minor, was a victim of a violation of [certain enumerated crimes, including 18 U.S.C. §§ 2421, 2423] and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court . . . ." 18 U.S.C. § 2255(a).[2] To prevail on a Section 2255 claim, a plaintiff must "show by a preponderance of the evidence that a defendant committed one of the enumerated [predicate] crimes," and a criminal conviction for the underlying offense is not necessary to establish liability. *Dixson v. Goodhue Children Ctr.*, No. 23-cv-9159, 2024 WL 1704729, at *1 (E.D.N.Y. Apr. 19, 2024) (citing *Prewett v. Weems*, 749 F.3d 454, 458 (6th Cir. 2014)).

---

[2] Section 2255 was amended most recently in 2022 to eliminate the statute of limitations for claims brought under the statute. *See Elden*, 88 F.4th at 1293 n.1. "Congress enacted the language applicable to this case in 2006, and since then, has altered § 2255(a) only by altering the predicate criminal offenses and modifying the remedies available to those who may recover." *Jenny v. Leonardis*, No. 24-cv-1407 (BKS/ML), 2026 WL 1130317, at *2 n.1 (N.D.N.Y. Apr. 27, 2026) (citations omitted).

### 1.    Rule 8

Defendants first argue that the Amended Complaint fails to satisfy Federal Rule of Civil Procedure 8's requirement that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" because it "relies extensively on impermissible group pleading." Dkt. No. 12-1 at 9-12;[3] *see* Fed. R. Civ. P. 8(a)(2). Plaintiff responds that violations of Rule 8 are found "only in extreme circumstances" and that the Amended Complaint gives Defendants fair notice of the claims against them. Dkt. No. 15 at 12-13.

Rule 8 requires that a complaint "give 'fair notice' of the claims asserted." *Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) (summary order) (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)). Although plaintiffs "cannot simply 'lump' defendants together for pleading purposes," Rule 8 does not prohibit "collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each." *Reynolds v. County of Onondaga*, No. 22-cv-1165 (BKS/TWD), 2023 WL 5200434, at *5 (N.D.N.Y. Aug. 14, 2023) (citation omitted). Here, the Amended Complaint asserts identical claims against Defendants, who are two closely related persons plausibly acting jointly, and the pleading is "coherent and relatively short." *See Claros v. Marvin's Refrigeration Corp.*, 800 F. Supp. 3d 391, 396-97 (N.D.N.Y. 2025). The Amended Complaint therefore satisfies Rule 8.

### 2.    Extraterritoriality and Motion to Strike

Defendants next argue that allegations of "abuse alleged to have occurred entirely in Moscow, Russia, prior to Defendants' permanent relocation to the United States, cannot, as a matter of law, support civil liability under 18 U.S.C. § 2255." Dkt. No. 12-1 at 12. Defendants

---

[3] Unless otherwise noted, citations to page numbers refer to the pagination generated by the CM/ECF system.

move to strike the "Moscow allegations and foreign criminal proceedings" as irrelevant and prejudicial. *Id.* at 15-16. Plaintiff responds that her claims are "well within" Section 2255's "authorized reach" and that she has alleged a domestic application of the statute and its predicate criminal statutes. Dkt. No. 15 at 14-17.

Under the statutory construction canon known as the "presumption against extraterritoriality," federal laws "will be construed to have only domestic application" absent "clearly expressed congressional intent to the contrary." *RJR Nabisco v. European Cmty.*, 579 U.S. 325, 335 (2016) (citing *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010)). Courts employ a "two-step framework for analyzing extraterritoriality issues." *Id.* at 337. At the first step, courts "ask whether the presumption against extraterritoriality has been rebutted—that is, whether the statute gives a clear, affirmative indication that it applies extraterritorially." *Id.* "If the statute is not extraterritorial, then at the second step [courts] determine whether the case involves a domestic application of the statute" by "looking to the statute's 'focus.'" *Id.* "If the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad." *Id.* A finding of extraterritoriality at step one "obviate[s] step two's 'focus' inquiry." *Id.* at 337-38 & n.5 (noting that the scope of an extraterritorial statute turns on limits that Congress has imposed on the statute's foreign application).

Here, the parties appear to agree that 18 U.S.C. § 2255 may apply to extraterritorial conduct insofar as the enumerated predicate criminal statutes have extraterritorial reach. *See* Dkt. No. 12-1 at 13 (Defendants arguing that the "scope" of Section 2255 "is limited to that of the underlying predicate offense"); Dkt. No. 15 at 15 (Plaintiff arguing that the "application" of Section 2255 "tracks the extraterritorial scope of the underlying predicate criminal statutes"). This approach

comports with the Supreme Court's analysis of the Racketeer Influenced and Corrupt Organizations Act (RICO) in *RJR Nabisco*. There, the Supreme Court held that RICO "gives a clear, affirmative indication that § 1962 applies to foreign racketeering activity—but only to the extent that the predicates alleged in a particular case themselves apply extraterritorially." *RJR Nabisco*, 579 U.S. at 338-39. Similarly here, then, the Court concludes that Plaintiff may maintain her Section 2255 claim based on extraterritorial conduct to the extent the underlying predicate offenses alleged apply extraterritorially.[4]

The Amended Complaint bases the Section 2255 claim on violations of three predicate criminal offenses: 18 U.S.C. § 2421, 18 U.S.C. § 2423(a), and 18 U.S.C. § 2423(b). *See* Dkt. No. 14 ¶¶ 50-62. All three provisions, on their face, have extraterritorial reach and/or permit a domestic application to the alleged facts, including that Defendants transported Plaintiff internationally with the intent to engage her in unlawful sexual activity. *See* 18 U.S.C. § 2421 (prohibiting the knowing transportation of an individual "in interstate *or foreign commerce*" with intent that the individual engage in unlawful sexual activity (emphasis added)); *id.* § 2423(a) (prohibiting the knowing transportation of a minor "in interstate *or foreign commerce*" with intent that the individual engage in unlawful sexual activity (emphasis added)); *id.* § 2423(b) (making it unlawful to travel "in interstate commerce or [to] *travel[] into the United States*" with intent to engage in illicit sexual conduct with another person (emphasis added)). Thus, as the Second Circuit held in interpreting a prior version of Section 2423(b), these statutes are "applicable to conduct occurring outside the United States." *United States v. Weingarten*, 632 F.3d 60, 67-71 (2d Cir. 2011) (holding that

---

[4] In *RJR Nabisco*, the Supreme Court held that the RICO provision providing for a private right of action did not overcome the presumption against extraterritoriality and that a "private RICO plaintiff therefore must allege and prove a *domestic* injury." 579 U.S. at 346. The parties do not address the extraterritorial scope, if any, of Section 2255 as it relates to a plaintiff's injuries. In any event, Plaintiff has alleged abuse occurring domestically.

Section 2423 applied to conduct outside the United States but did not criminalize "travel occurring wholly between two foreign countries and without any territorial nexus to the United States"); *see also Vang v. Prataya*, No. 12-cv-1847, 2017 WL 401942, at *4 (D. Minn. Jan. 30, 2017) (noting that Section 2423(c), "[b]y its terms," "applies to extraterritorial conduct").

To the extent Defendants move to strike allegations concerning conduct in Moscow that is not directly related to the elements of these offenses, that request is denied. Under Federal Rule of Civil Procedure 12(f), "a court may strike 'from a pleading' any 'insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'" *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 95 (2d Cir. 2019) (quoting Fed. R. Civ. P. 12(f)). A Rule 12(f) motion to strike material as "impertinent and immaterial" should be denied "unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) ("[T]he courts should not tamper with the pleadings unless there is a strong reason for so doing.") (citations omitted). Evidentiary questions such as relevancy and admissibility "should especially be avoided at such a preliminary stage of the proceedings," *id.*, and Defendants concede that allegations regarding Moscow conduct may "constitute narrative background," Dkt. No. 12-1 at 14. Finally, Defendants' concern of unfair prejudice before the "factfinder" is misplaced, as the pleadings are not ordinarily submitted to the jury. *See Britt v. Buffalo Mun. Hous. Auth.*, No. 06-cv-57S, 2008 WL 4501929, at *1 (W.D.N.Y. Sept. 30, 2008) (citations omitted). The Court therefore declines to strike any allegations from the Amended Complaint.

### 3.    Predicate Criminal Violations

Defendants next argue that Plaintiff has not plausibly alleged any predicate criminal violation as required to state a claim under 18 U.S.C. § 2255 and has failed to plausibly allege that Sysoeva specifically committed any predicate offense. Dkt. No. 12-1 at 17-24. Plaintiff responds

that she has alleged violations of 18 U.S.C. §§ 2421, 2423 and that the requisite intent to engage

in sexual abuse may be alleged generally. Dkt. No. 15 at 21-23.

Section 2421 provides in relevant part:

> Whoever knowingly transports any individual in interstate or foreign commerce, or in any Territory or Possession of the United States, with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2421(a).

Section 2423 provides in relevant part:

> (a) Transportation with intent to engage in criminal sexual activity.—A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life.
>
> (b) Travel with intent to engage in illicit sexual conduct.—A person who travels in interstate commerce or travels into the United States, or a United States citizen or an alien admitted for permanent residence in the United States who travels in foreign commerce, with intent to engage in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

*Id.* § 2423(a), (b).

Sections 2421 and 2423(a) both criminalize the transportation of an individual in interstate

or foreign commerce with the intent that the individual transported "engage in sexual activity for

which some person could be criminally charged." *United States v. Vargas-Cordon*, 733 F.3d 366,

375 (2d Cir. 2013) (discussing Section 2423(a)). The salient difference is that the individual

transported for purposes of Section 2423(a) must be a minor, which is not disputed here. Plaintiff

alleges that Defendants knowingly transported her in interstate or foreign commerce with the intent to engage in unlawful sexual activity on two occasions: (1) in 2015, when the parties flew to and from Russia and New Jersey for the summer, and (2) in 2018, when the parties flew from Russia to the United States to relocate. Dkt. No. 14 ¶¶ 16-20, 29-34. These trips occurred against a backdrop of ongoing sexual abuse allegedly perpetrated by both Stanilovskiy and Sysoeva, *see id.* ¶¶ 12, 16-21, and Plaintiff alleges that she was in fact sexually abused after each international trip, *id.* ¶¶ 17-18, 36-40. Plaintiff also asserts a violation of Section 2423(b), which requires that the defendant travel "into the United States" with the same culpable intent.

Defendants argue that Plaintiff does not allege that Defendants traveled or transported Plaintiff with the requisite intent because the allegations "describe lawful, commonplace conduct—a family visit and subsequent relocation." Dkt. No. 12-1 at 21-22. But as Plaintiff points out, Federal Rule of Civil Procedure 9 provides that "intent" and "other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Although a plaintiff "realistically cannot be expected to plead a defendant's actual state of mind," plaintiffs "are required to include allegations of the facts or events they claim give rise to an inference of knowledge." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 864 (2d Cir. 2021) (citations omitted).

Here, the Court concludes that the Amended Complaint's allegations, taken as a whole, give rise to an inference that Defendants traveled and transported with the requisite intent sufficient to survive a motion to dismiss. Notably, the "contemplated unlawful sexual activity need not be the defendant's *sole* purpose for transporting a minor in interstate or foreign commerce." *Vargas-Cordon*, 733 F.3d at 375-76. It must "only be a 'dominant purpose' of the transportation" and can even be "one of multiple dominant purposes." *Id.* Thus, Plaintiff has sufficiently alleged intent at this stage, and the fact that there may have been other motivations for the travel is not dispositive.

11

*See Weingarten*, 632 F.3d at 63 (referencing conviction under Section 2423(b) where father and daughter traveled together from Brooklyn to Antwerp while family was in process of moving from Antwerp to Israel).

Defendants argue that Plaintiff has not alleged that Sysoeva specifically committed a violation of an enumerated predicate statute but, at most, only "indirect or facilitative conduct" on Sysoeva's part. Dkt. No. 12-1 at 23-24. But the Amended Complaint specifically alleges that both Stanilovskiy and Sysoeva transported Plaintiff and participated in the alleged abuse, and that Sysoeva at other times "observed and permitted the abuse" perpetrated by Stanilovskiy. *See* Dkt. No. 14 ¶¶ 12, 16-20, 30-39. The Court concludes that it is not necessary for Plaintiff to allege at this stage "who purchased airline tickets" or "initiated or directed the travel," for example. *See* Dkt. No. 20 at 12.

Finally, Defendants spend much of their reply arguing that the Amended Complaint fails to state a claim because it relies on a "shifting and internally inconsistent narrative supported largely by conclusory assertions." *See* Dkt. No. 20 at 4-9. Defendants contend, for example, that the Amended Complaint does not explain why Defendants "would suddenly begin paying [Plaintiff] cash" in the summer of 2016, that it is not plausible to suggest that Defendants "were fleeing anything" when they left Russia given that Plaintiff withdrew her accusations, and that it is not plausible that Sysoeva would send Victim 2 to live away from the family but not Plaintiff. *See id.* These may be arguments Defendants choose to raise at a later stage of the proceedings, but on a motion to dismiss the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017) (citation omitted). Drawing all

reasonable inferences in favor of Plaintiff, the Amended Complaint plausibly alleges a claim under Section 2255.

Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's claim under 18 U.S.C. § 2255.

### B.    State Common-Law Claims

Defendants move to dismiss Plaintiff's common-law claims for failure to state a claim but, as a threshold matter, the Court must determine whether it has jurisdiction over those claims. *See Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000) ("[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*."); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Because it was "not clear that the Court has supplemental jurisdiction over Plaintiff's claims for conversion and unjust enrichment/accounting/constructive trust," the Court solicited letter briefs from the parties addressing "whether and on what basis the Court has jurisdiction over Plaintiff's common-law claims." Dkt. No. 23; *see* Dkt. Nos. 24, 25.[5]

In "any civil action of which the district courts have original jurisdiction," with certain exceptions not relevant here, districts courts "shall have supplemental jurisdiction over all other

---

[5] The Amended Complaint does not invoke diversity jurisdiction and does not allege the country (or countries) of which the parties are citizens. The original complaint *did* invoke diversity citizenship and alleged that Plaintiff "resid[es]" in New Hampshire and Defendants in New York. Dkt. No. 1 ¶¶ 4, 6-7. Defendants argued in their motion to dismiss that diversity jurisdiction did not exist because even "lawful permanent residence does not create diversity where all parties are citizens of the same foreign state." Dkt. No. 12-1 at 28; *see Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 126 (2d Cir. 2020) (holding that plaintiff who was "an Israeli citizen and permanent resident in the United States domiciled in New York" was "an alien for the purposes of diversity jurisdiction"). References to diversity jurisdiction were then omitted from the Amended Complaint, and neither party's letter brief references diversity jurisdiction.

claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Disputes are part of the same "case or controversy" when they "derive from a common nucleus of operative fact." *Hamilton Reserve Bank Ltd. v. Democratic Socialist Republic of Sri Lanka*, 134 F.4th 73, 79 (2d Cir. 2025) (citation omitted). To determine whether two disputes arise from a "common nucleus of operative fact," courts consider "whether the facts underlying the federal and state claims substantially overlap[] or the federal claim necessarily br[ings] the facts underlying the state claim before the court." *Id.* at 80 (internal quotation marks, ellipses, brackets, and citation omitted).

Plaintiff argues that her common-law claims arise from the same common nucleus of operative fact as her federal claims because both involve "the exploitation of a minor through sexual and economic abuse." Dkt. No. 25 at 2-3 (arguing that the alleged "economic abuse is part of the coercive environment relevant to proving Defendants' intent in federal child trafficking claims"). Defendants argue that the common-law claims "concern an entirely separate commercial and inheritance dispute" which is distinct from Plaintiff's federal claims. *See* Dkt. No. 24 at 2-3.

The Court concludes that Plaintiff's claims for conversion, unjust enrichment, constructive trust, and accounting do not arise from the same common nucleus of operative fact as her federal claim under 18 U.S.C. § 2255 because the claims do not substantially overlap and the Section 2255 claim does not necessarily bring the facts underlying the state claim before the Court. Even taking as true Plaintiff's assertion (for which no facts are alleged in the Amended Complaint) that her claims involve some element of economic abuse or coercion, her common-law claims do not require or depend on any such abuse or coercion. Rather, as Defendants point out, those claims depend on proof of things like inheritance rights, ownership interests, entitlement to proceeds, and

14

the existence and calculation of such proceeds—all of which are unrelated to her Section 2255 claim. *See* Dkt. No. 24 at 3. Thus, at most Plaintiff's Section 2255 claim and common-law claims share parties and background familial relationships in common. This is insufficient to confer on the Court subject-matter jurisdiction over the common-law claims under Section 1367(a). *See Roman Y Gordillo, S.C. v. Bank of N.Y. Mellon Corp.*, No. 12-cv-212, 2014 WL 3507300, at *9 (S.D.N.Y. July 14, 2014) (noting that a "common background" is "not a sufficient basis, without more, for the Court to consider claims part of a common nucleus of operative fact" and collecting cases).

The Court therefore dismisses Plaintiff's common-law claims for conversion (count III) and unjust enrichment/accounting/constructive trust (count IV) without prejudice for lack of subject-matter jurisdiction.

### C.    Claim under N.J. Stat. § 2A:61B-1

Plaintiff also brings a claim under N.J. Stat. § 2A:61B-1, which provides a civil remedy for sexual abuse. The Court has supplemental jurisdiction over this state-law statutory claim, which plainly arises from a common nucleus of operative fact as Plaintiff's federal claims premised on the same underlying alleged abuse.

Defendants move to dismiss Plaintiff's claim brought under N.J. Stat. § 2A:61B-1 on the sole ground that the Court should decline to exercise supplemental jurisdiction over the claim if Plaintiff's federal claims are dismissed. Dkt. No. 12-1 at 28-29. Because the Court denies Defendants' motion to dismiss Plaintiff's Section 2255 claim, Defendants' motion to dismiss the New Jersey statutory claim is also denied.

## IV.    MOTION TO SEAL

As an exhibit to their reply memorandum of law, Defendants filed an exhibit consisting of a redline comparison between the original complaint and the Amended Complaint. Dkt. No. 21.

Defendants filed a letter motion requested that pages 29-31 of that exhibit be sealed because those pages contain the names of sexual assault victims. *See* N.D.N.Y. Local Rule 5.2(a)(6). Defendants' request is granted. The redacted version of Exhibit 1 which Defendants provided to the Court will be uploaded to the docket.

## V.    PROCEEDING UNDER PSEUDONYM

Upon commencing this action, Plaintiff moved for an order permitting the redaction of both her name and other sexual assault victims' names, relying on Federal Rule of Civil Procedure 5.2(e) and Local Rule 5.2(a)(6). Dkt. No. 2. On November 6, 2025, Magistrate Judge Dancks granted Plaintiff's motion as follows: "Pursuant to Local Rule 5.2, Plaintiff may redact the name(s) of any sexual assault victims listed in the complaint, and the exhibits to the complaint. This Order is without prejudice to further address and/or renew the request once defendants have appeared in the action." Dkt. No. 6.

Plaintiff has not, however, moved to proceed using a pseudonym. Federal Rule of Civil Procedure 10(a) provides that the "title of the complaint must name all the parties." *See also United States v. Pilcher*, 950 F.3d 39, 42 (2d Cir. 2020) ("Identifying parties in a proceeding is an important dimension of publicness, as people have a right to know who is using their courts." (citation and internal quotation marks omitted)). "Courts have recognized limited exceptions to the 'general requirement of disclosure' of the names of parties 'which permit plaintiffs to proceed anonymously.'" *Doe v. Church*, No. 21-cv-890 (BKS/DJS), 2022 WL 1490486, at *2 (N.D.N.Y. May 11, 2022) (quoting *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188-89 (2d Cir. 2008)). The determination of whether a party may proceed using a pseudonym is within the court's discretion; the plaintiff's "interest in anonymity" must be "balanced against both the public interest in disclosure and any prejudice to the defendant." *Id.*; *see Sealed Plaintiff*, 537 F.3d at 189-90 (setting forth list of non-exhaustive factors relevant to this determination).

16

Thus, if Plaintiff wishes to proceed under a pseudonym, she may move to do so under the appropriate standard by June 26, 2026.

## VI.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's claims for conversion (count III) and unjust enrichment/accounting/constructive trust (count IV) are **DISMISSED without prejudice** for lack of subject-matter jurisdiction; and it is further

**ORDERED** that Defendants' motion to dismiss, Dkt. No. 12, is **DENIED**; and it is further

**ORDERED** that Defendants' letter motion to seal pages 29-31 of Exhibit 1 to their reply, Dkt. No. 22, is **GRANTED**, and the Clerk is directed to upload the redacted version of Exhibit 1 which Defendants provided to the Court to the docket; and it is further

**ORDERED** that Plaintiff must either file a second amended complaint which contains her name or move to proceed using a pseudonym by June 26, 2026; and it is further

**ORDERED** that any motion to proceed by pseudonym is referred to Magistrate Judge Carla B. Freedman.

**IT IS SO ORDERED.**

Dated: June 1, 2026

_____
Elizabeth C. Coombe
U.S. District Judge